IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEANETTE MILLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:17-CV-2360-L** |
| | § | |
| DARRELL MILLER and RODERICK MILLER, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is the Motion of Jeanette Miller to Withdraw Funds from Court Registry (Doc. 22), filed February 13, 2019. The court makes the following findings of fact and conclusions of law by a preponderance of the evidence[1] pursuant to Rule 52(a) of the Federal Rules of Civil Procedure[2] following a hearing and bench trial as to whom is entitled to receive the benefits of a

---

[1] Proving a fact by a "preponderance of the evidence" means showing that the existence of a fact is more likely than not. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983). Thus, to prove a fact or claim by a preponderance of the evidence, a party must prove that it is more likely than not that its version of the facts is true. *Id.*

[2] In preparing this memorandum opinion and order, the court carefully considered the trial testimony and exhibits and applied the standard in this circuit for findings of fact and conclusions of law. *See Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (discussing standard for findings and conclusions under Federal Rule of Civil Procedure 52). In accordance with that standard, the court has not set out its findings and conclusions in "punctilious detail" or "slavishly trace[d] [] the claims issue by issue and witness by witness." Neither has the court "indulge[d] in exegetics, or pars[ed] or declaim[ed] every fact and each nuance and hypothesis." *Id.* (internal quotation marks and citations omitted). The court instead has limited its discussion to those legal and factual issues that form the basis for its decision. *Id.*

The facts contained herein are either undisputed or the court has made the finding based on the credibility or believability of each witness. In doing so, the court considered all of the circumstances under which the witness testified, including: the relationship of the witness to Plaintiffs or Defendants; the interest, if any, the witness has in the outcome of the case; the witness's appearance, demeanor, and manner of testifying while on the witness stand; the witness's apparent candor and fairness, or the lack thereof; the reasonableness or unreasonableness of the witness's testimony; the opportunity of the witness to observe or acquire knowledge concerning the facts to which he or she testified; the extent to which the witness was

group life insurance policy that falls under an employee benefit plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"). For the reasons set forth herein, the court **grants** the Motion of Jeanette Miller to Withdraw Funds from the Court Registry (Doc. 22).

I. **Procedural Background and Findings of Fact**[3]

On September 6, 2017, Metropolitan Life Insurance Company ("MetLife") filed its Complaint for Interpleader ("Complaint")[4] (Doc. 1). MetLife filed this action because it did not wish to be exposed to double liability if it paid the wrong beneficiary.

Daniel Miller ("Mr. Miller" or "Decedent"), a retiree from the General Motors Company ("GM"), was a participant in GM's Basic Life Insurance Plan No. 15500-G (the "Plan"), an ERISA-regulated employee welfare benefit plan sponsored by GM and funded by a group life insurance policy issued by MetLife. MetLife, as claim fiduciary, was required to administer claims in accordance with ERISA and the documents and instruments governing the Plan. 29 U.S.C. §1104(a)(1)(D). ERISA defines a beneficiary as "[a] person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. §1002(8). At the time of his death on November 23, 2016, Mr. Miller was married to Jeanette Miller ("Mrs. Miller"). Mr. Miller and Mrs. Miller were married in Tarrant County, Texas, on May 27, 2003.

---

contradicted or supported by other credible evidence; and whether such contradiction related to an important factor in the case or some minor or unimportant detail. When necessary, the court comments on the credibility of a witness or the weight to be given to a witness's testimony.

[3] Any findings of fact that more appropriately should be considered or regarded as a conclusion of law shall be considered or regarded as such.

[4] The court also considers and relies on the exhibits attached to the Complaint, as they are not in dispute.

**Memorandum Opinion and Order – Page 2**

The Plan establishes on page 32 the right of a Plan participant to name his or her beneficiary. The Plan was amended by a rider, effective January 2009, to state the following:

> 4. No Beneficiary at YOUR Death
>      If there is no Beneficiary at YOUR death for any amount of benefits payable because of YOUR death, that amount will be paid to one or more of the following persons who are related to YOU and who survive YOU:
> (a) SPOUSE
> (b) child
> (c) parent
> However, we may instead pay all or part of that amount to YOUR estate.
> Any payment will discharge our liability for the amount so paid.

Ex. 1.1 to Compl.

The only accepted beneficiary designation form on file for the Decedent is dated August 5, 2016, and names Darrell and Roderick Miller ("Darrell" and "Roderick" or the "Miller Brothers"), two of Mr. Miller's sons from a previous marriage, as the primary beneficiaries with each receiving a fifty-percent share of the life insurance benefits. Mr. Miller's previous wife, Ms. Ida Miller and the mother of Darrell and Roderick, died in 2002.

On or about September 9, 2016, Mrs. Miller provided a beneficiary designation form naming herself as the sole primary beneficiary, along with the Decedent's Living Trust and the Insured's Estate. Mrs. Miller signed this beneficiary designation form as the power of attorney for the Decedent and provided MetLife with the Statutory Durable Power of Attorney of Daniel Miller. The beneficiary designation form was rejected because the boxes indicating which coverages applied were not checked. Later, Mrs. Miller provided a second beneficiary designation form naming herself as the sole primary beneficiary. This beneficiary designation form was rejected because the boxes indicating which coverages applied were not checked.

Mr. Miller died on November 23, 2016. At the time of his death, Mr. Miller was enrolled for life insurance coverage in the amount of thirty four thousand seven hundred and eighty eight

dollars and zero cents ($34,788) (the "Life Insurance Benefits"). The Life Insurance Benefits became payable to the proper beneficiary (or beneficiaries) upon his or her death.

On or about November 30, 2016, Roderick and Darrell each signed an Assignment of Insurance Proceeds with Golden Gate Funeral Home in the amount of $7,221.90 and an Irrevocable Assignment and Power of Attorney. The Irrevocable Assignments to Golden Gate Funeral Home were reassigned to C&J Financial, LLC.

On or about December 7, 2016, MetLife received Life Insurance Claims Forms from Darrell and Roderick. On or about December 9, 2016, MetLife received Claimant's Statements signed on behalf of Darrell and Roderick by C&J Financial.

MetLife received a December 13, 2016 letter from Mrs. Miller stating that she was contesting the August 5, 2016 beneficiary designation form, asserting that the Decedent had suffered from dementia since 2014 and was not coherent enough to understand what he was "agreeing" to sign. To support her contention, she provided MetLife with several pages of medical records that detailed the Decedent's medical condition.

According to MetLife, it could not determine the proper beneficiary of the Life Insurance Benefits without risking exposure to double liability because it could not determine which beneficiary designation was dated first—that is, the one filed by Darrell and Roderick, or that filed by Mrs. Miller.

By letters dated January 23, 2017, and March 7, 2017, MetLife advised the Miller Brothers and Mrs. Miller that their claims were adverse to one another and raised issues that could not be determined by MetLife. MetLife gave the three an opportunity to try to resolve the matter to preserve the Life Insurance Benefits from litigation costs and fees.

As a mere stakeholder, MetLife had no interest in the Life Insurance Benefits, except to recover its attorney's fees and costs of this action. MetLife, therefore, requested the court to determine to whom the Life Insurance Benefits should be paid.

On January 22, 2018, the court granted MetLife's Unopposed Motion to Deposit Plan Benefits into the Registry and for Discharge with Prejudice and ordered and decreed that:

> 1. Metropolitan Life Insurance Company ("MetLife") shall pay into the registry of the court the Plan Benefits in the amount of $34,788, plus any accrued interest, that are payable as a result of the death of Daniel Miller;
>
> 2. Defendants Darrell Miller, Roderick Miller, Jeanette Miller and C&J Financial, LLC are enjoined and restrained from instituting or prosecuting any action or proceeding in any State or United States Court against MetLife, General Motors Company's Basic Life Insurance Plan No. 15500-G (the "Plan") and General Motors Company for the recovery of the Plan Benefits;
>
> 3. After MetLife deposits the Plan Benefits into the registry of the court, it is dismissed with prejudice from this action, and MetLife, the Plan and General Motors Company are discharged with prejudice from any further liability related to the Plan Benefits or arising out of any claim for the Plan Benefits; and
>
> 4. C&J Financial, LLC shall file a motion for realignment of the parties forthwith, and then file a request for entry of default and a motion for default judgment in accordance with Federal Rule of Civil Procedure 55 by **February 2, 2018**. The motion for default judgment shall include sufficient evidence for the court to determine how Defendants Darrell Miller, Roderick Miller, and Jeanette Miller ("Defendants") are liable to C&J Financial, LLC and to show that it is entitled to the relief requested.

Doc. 11 at 1-2.

In compliance with the court's order, C&J Financial filed its motion for realignment of the parties. The court granted the motion and directed the clerk of court to realign the parties as follows: C&J Financial, LLC, Plaintiff v. Darrell Miller, Roderick Miller, and Jeanette Miller, Defendants (Doc. 15).

On July 20, 2018, the court issued a memorandum opinion and order (Doc. 20) granting C&J Financial, LLC's Motion for Default Judgment Against Darrell Miller and Roderick Miller

(Doc. 17) but denied it as moot insofar as it related to Jeanette Miller. As a result of granting the motion against Darrell and Roderick Miller, the court issued a default judgment against the two brothers in favor of C&J Financial in the total amount of $8,144.32, and directed the clerk of court to take the necessary steps to issue a check to C&J Financial in the amount of the default judgment (Doc. 21).

On July 20, 2018, the case was erroneously closed with funds remaining in the registry of the court and was inactive until Mrs. Miller sent the court a letter, filed February 13, 2019, demanding that the remaining funds in the registry of the court be paid to her. As a result of this correspondence, the court on March 22, 2019, directed the clerk of court to reopen the action; and in the interest of justice, the court treated Mrs. Miller's letter as an answer to the Complaint, even though it was untimely (Doc. 22 at 2). Although, the Miller Brothers had not answered or otherwise made any inquiry regarding the funds, the court allowed them ten days to inform the court whether they intended to pursue this action. *Id*. As of March 22, 2019, $31,188.82 remained in the court's registry. *Id*.

The Miller Brothers responded on March 29, 2019, and stated that they believed they were entitled to the funds in the registry of the court because Mr. Miller had left the funds to them by an earlier signed will. In light of the response by the Miller Brothers, the court redesignated Mrs. Miller as "Plaintiff" because she sought affirmative relief prior to the Miller Brothers. The Miller Brothers made their appearance only after inquiry by the court, and it designated them as "Defendants."

Pursuant to an order of the court, a hearing and bench trial was held on May 10, 2019, and four witnesses testified at the hearing: Mrs. Miller; her niece, Ms. Gwendolyn Ayers; Mr. Darrell

Miller; and Mr. Nathaniel Miller, another son of Mr. Miller. The bench trial lasted just over two hours.

Mr. Miller was officially diagnosed as having Dementia with Lewy bodies on September 10, 2014. Also, he was diagnosed as having "major depressive disorder, recurrent, severe with psychotic symptoms" on December 19, 2014. Pl.'s Ex. 1. Further, Mr. Miller was diagnosed with hypertension on October 27, 2015.

Dementia with Lewy bodies ("DLB") is one of the most common types of progressive dementia, and its main features are progressive cognitive decline; variations in alertness and attention; visual hallucinations; and slowness of movement, difficulty in walking, or rigidity. Some persons with DLB may also suffer from depression. DLB is a neurodegenerative disorder, and it results in progressive intellectual and functional deterioration. There is nothing known to delay or prevent the progression of DLB. *Dementia with Lewy Bodies Information Page*, Nat'l Institute of Neurological Disorders and Stroke, (last modified Mar. 27, 2019, 4:20 p.m.), http://www.ninds.nih.gov/Disorders/All-Disorders/Dementia-Lewy-Bodies-Information-Page.

The Certificate of Death listed Cerebrovascular Disease and Dementia as the immediate causes of death of Mr. Miller. The Certificate of Death also states in the box, "Approximate interval Onset to Death" as "YRS." The court finds this means that both conditions existed years before Mr. Miller's death in November 2016.

Mr. Miller could no longer recognize Mrs. Miller after September of 2016. Darrell Miller noticed "toward the end of 2014" that his father "would drift in and out" insofar as being aware of what was taking place. Mr. Miller's condition got "progressively worse," and Darrell Miller noticed a "real downgrade" in his father's health in the fall or summer of 2015, but his father always recognized him.

On August 28, 2015, a Tarrant County Probate Judge ordered Mr. Miller to present himself for a mental examination at Oceans Hospital in Fort Worth, Texas. Sometime later on August 28, 2015, the same Probate Judge ordered Mr. Miller to be taken into protective custody and detained at Oceans Hospital pending further order of the court because Dr. Timothy Adams examined Mr. Miller and determined that he posed a substantial risk of serious harm to himself or others. Pl.'s Ex. 2. A hearing was apparently held within the next week. From what the court can reasonably ascertain from the record and Mrs. Miller's testimony, the Probate Judge ordered that Mr. Miller be taken to a "nursing home," and Mr. Miller lived at the nursing facility until he passed away in November 2016. Mrs. Miller visited him daily at the nursing facility.

Given the plethora of information in the record, the court unequivocally finds that Mr. Miller did not have the requisite mental capacity or competence at the end of August 2015 to understand or comprehend the nature and consequences of his acts, or to execute a legal document and understand its legal significance. In conjunction with this finding, Mr. Miller would not have had the mental capability or capacity to understand the nature and consequences of his acts regarding any document he may have signed after the end of August 2015.

As a final finding of fact, the court finds the testimony of Mrs. Miller more credible than the testimony of Mr. Darrell Miller. The court so finds because Mrs. Miller's testimony is more consistent with the exhibits admitted into evidence; she visited and interacted with Mr. Miller on a daily basis while he was at the nursing facility; and her testimony concerning her husband's health provided a more logical and sensible narrative than that of Mr. Darrell Miller.

## II. Conclusions of Law[5]

The Plan in question in this case is covered by and falls within the scope of ERISA.

> ERISA requires "[e]very employee benefit plan [to] be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), "specify[ing] the basis on which payments are made to and from the plan," § 1102(b)(4). The plan administrator is obliged to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I] and [Title IV] of [ERISA]," § 1104(a)(1)(D), and ERISA provides no exemption from this duty when it comes time to pay benefits.

*Kennedy v. Plan Adm'r for Du Pont Sav. & Inv. Plan*, 555 U.S. 285, 299 (2009). "ERISA provides no exemption from this duty when it comes time to pay benefits." *Id*. at 300.

The purported beneficiary designation filed by the Miller Brothers and Mrs. Miller in 2016 are null and void, and, therefore, have no legal effect. This is so because Mr. Miller was not mentally competent to comprehend and understand what it meant to make a beneficiary designation regarding the Life Insurance Benefits.

Although any document purportedly signed by Mr. Miller in 2016 is null and void, Mrs. Miller still is entitled to recover the remaining insurance proceeds of the Plan. Mr. Miller had not made a beneficiary designation at the time of his death. The Plan clearly states that if there is no beneficiary at the time of the Plan member's death, the amount of benefits payable will first be made to the Plan member's spouse. The Plan also states that MetLife could pay all or part of the benefits to the Plan member's estate; however, MetLife elected not to do so, and instead, it chose to allow the court to decide who was entitled to the proceeds of the insurance policy held by Mr. Miller. As Mrs. Miller was the surviving spouse and MetLife, in its discretion, elected not to pay

---

[5] Any conclusions of law that more appropriately should be considered or regarded as a finding of fact shall be considered or regarded as such.

**Memorandum Opinion and Order – Page 9**

any of the benefits to Mr. Miller's estate, Mrs. Miller, *as a matter of law*, is entitled to what remains of the insurance benefits.

The Miller Brothers argue that they are entitled to the proceeds because their father executed a will that leaves all of his property to them. Because this is a Plan that is governed by ERISA and the Plan documents control, that a will exists and is contrary to the Plan documents is quite beside the point. A court must adhere to the provisions of the Plan documents, notwithstanding any contrary language in a will or other document. Accordingly, Mrs. Miller is entitled to the remaining proceeds of the insurance benefits, and the court denies all relief requested by the Miller Brothers.

As of December 31, 2019, the amount in the registry of the court is $30,785.36, with interest net earnings of $700.82, for a total of $31,486.18. The court will issue judgment in favor of Mrs. Miller by separate document as required by Federal Rule of Civil Procedure 58. All allowable and reasonable costs will be taxed against the Miller Brothers.

**It is so ordered** the 31st day of December, 2019.

Sam A. Lindsay
United States District Judge